## HALL *v.* NAYLOR.

Where the question is, whether a vendee of goods procured the sale of them through fraud, evidence is admissible of purchases made by him at or about the same time, involving similar frauds.

Evidence is admissible of cotemporaneous sales procured by affirmative representations of the purchaser's solvency, though the issue is upon an alleged fraudulent concealment of facts material to his credit.

Otherwise of representations which, though false, were not fraudulent, as statements in respect to his circumstances made to a creditor having no present right of action, for the purpose of quieting his alarm in respect to his security, though accompanied by an offer to return goods previously purchased, and his declining of the offer in consequence of such representations.

APPEAL from the Supreme Court of New York city. Action to recover the possession of merchandise, sold by the plaintiff to A. Kerr & Co., and by them assigned to the defendant, with their other property, in trust for creditors. At the trial, before Mr. Justice SLOSSON, it was proved that Kerr & Co. purchased the goods in question on the 31st March, 1854, on a credit of eight months. They failed, and made a general assignment to the defendant, on the 14th April, 1854. No representations were made to the plaintiff by Kerr & Co. in respect to their solvency, and upon this ground the defendant objected to evidence, which was offered and received, under exception by him, of statements in respect to their circumstances, made by Kerr & Co., to several merchants, upon purchases of goods made by them, at and about the time of the purchase from the plaintiff. The facts sufficiently appear in the following opinion. The plaintiff had a verdict, and the judgment thereon having been affirmed at general term, the defendant appealed to this court. The case was submitted on printed points.

*P. T. Woodbury,* for the appellant.

*Albert Mathews* for the respondent.

Hall *v.* Naylor.

COMSTOCK, J. It does not appear that Kerr & Co., on purchasing the goods in question, made any representations of their ability to pay for them. If, however, they concealed the fact of their insolvency, with a design of procuring the goods and not paying for them, it was a fraud which rendered the sale void, if the plaintiff chose so to regard it. On the trial of such an issue, the *quo animo* of the transaction is the fact to be arrived at ; and it is, therefore, competent to show that the party accused was engaged in other similar frauds at or about the same time. The transactions must be so connected in point of time, and so similar in their other relations, that the same motive may reasonably be imputed to them all. ( *Carey* v, *Hotaling*, 1 *Hill*, 311, *and cases cited.*) It is not necessary, however, that the means of accomplishing each fraud should be the same. Where the question is, whether goods have been procured by a fraudulent suppression of facts material to credit given, it will be competent to prove that, in other instances, they have been obtained by actual misrepresentation concerning the same facts. The concealment in one case, and false representation in the other, are evidence merely of a fraudulent design, common to both transactions, of procuring goods without the ability or the intention to pay for them. These observations are a sufficient answer to several objections which were taken at the trial to the admission of the evidence.

There was, however, one objection which does not admit of an answer within the rules of evidence which govern in cases of this kind. It appears that, about two months before the sale in question, Kerr & Co. bought goods on credit of one Morlot. There is no pretence that there was any fraud in that purchase. Kerr & Co., therefore, had a right to keep those goods, and dispose of them as they pleased. But Morlot, becoming alarmed for the safety of his debt, requested them to pay some of their notes in advance. This they said they were not prepared to do, but

they offered to return the goods if he required, at the same time affirming that the notes would be paid when due; that they were doing a good business, and were making money. On the strength of these representations, Morlot, as he testified, allowed them to retain the goods, for which they owed a considerable sum at the time of their failure. I can find no principle to justify the admission of this evidence. It may be conceded that the representations to Morlot were untrue, and that Kerr & Co. knew them to be so; yet the law will not consider them as fraudulently made, because the goods were already in possession of Kerr & Co., and unqualifiedly belonged to them. The only object, and the only effect, which these representations could have, would be to quiet the apprehensions of a creditor who had no pretence of right to reclaim the property sold, and whose debt was not yet due, and could not be enforced. As this transaction, therefore, was not fraudulent, it could have no legitimate bearing upon the issue which was on trial, and consequently the evidence ought not to have been allowed to go before the jury.

In another respect, there is some difficulty in sustaining the judgment of the court below. At the trial, the defendants insisted, in different forms of expression, that the concealment, merely, by Kerr & Co., of their pecuniary circumstances, did not necessarily avoid the sale, even if they believed themselves to be insolvent; and the judge was requested to charge in accordance with this doctrine. So, at least, I understand the request; and, so understanding it, the defendant was entitled to have the jury instructed accordingly. The law does not deny the possibility of an honest purchase of goods on credit by an insolvent person, without a disclosure of the fact. He may have, not only an intention of paying for them when the credit expires, but a reasonable expectation of being able to do so. The true point of inquiry in such cases is, whether there was a preconceived design not to pay for the goods. That inquiry

Hall *v.* Naylor.

the jury must solve, taking into their consideration the concealment and all the attending and subsequent circumstances, admitted in evidence, which may serve to throw light upon that issue. (*Nichols* v. *Pinner*, 18 *N. Y.*, 295.)

It is claimed that in the charge actually given to the jury, the judge recognized the rule to be, in substance, as it is here stated. Such was, perhaps, his intention. But the charge was certainly open to criticism. In one connection he correctly stated the inquiry to be, whether Kerr & Co. bought the goods with intent not to pay for them. But, in another, he told the jury, that, if knowing their insolvency, they did not disclose the fact, they acted fraudulently. I concede that the jury might have so found, upon all the circumstances; still, the proposition was not universally and unqualifiedly true. Connecting the charge with the refusal to respond to the requests made by the defendant's counsel, the jury were, quite likely, left in doubt as to the true rule on the subject. This obscurity will, no doubt, be avoided on another trial; and it is for that purpose, mainly, that this branch of the case has been referred to. We think the judgment must be, reversed, and a new trial granted, for the error, above considered, in receiving evidence of the representations made to Morlot.

JOHNSON, Ch. J., DENIO, SELDEN, ALLEN, and GROVER, Js., concurred; STRONG, J., dissented; and GRAY, J., expressed no opinion.

Judgment reversed, and new trial ordered.