## WILLIAM H. VAN KLEECK *vs.* PHILIP LE ROY and WILLIAM H. DEYO.

To justify a vendor in treating a sale of personal property as void, and in re-taking the property, on the ground of false and fraudulent representations, such representations must be made to *him*, or made for the purpose of being communicated to him, and with the design of influencing *his* conduct.

False statements made to a stranger, without any intent to influence the conduct of the plaintiff, cannot be made the pretext for avoiding a sale made by the plaintiff himself. PECKHAM, J. dissented.

THIS action was brought to recover certain goods on the alleged ground that they had been purchased by William F. Le Roy, under fraudulent representations as to his cir-

cumstances and responsibility. A few weeks after the purchase, Le Roy made an assignment for the benefit of creditors, to the defendants. The property, which consisted of groceries, &c., was replevied out of the possession of the defendants, shortly after the assignment. The action was commenced without any ·demand upon the defendants or Wm. F. Le Roy for the goods, or any notice that the plaintiff had elected to rescind the contract of sale, under which he had parted with the possession of the property. This objection was duly taken on the trial, but was not important to be considered, as the defendants succeeded on the trial. It appeared on the trial that William F. Le Roy had for some time been dealing with the plaintiff, and purchasing on credit. That on the 5th of December, 1860, he purchased the goods in question. That at the time of the purchase, Le Roy remarked to the plaintiff that he was responsible for all the goods he would buy—was good enough for it. The plaintiff did not at this time, or ever previously, inquire of him about his circumstances. He says he made inquiries of others about him; among them was Mr. Kenworthy, before he sold him the goods. Le Roy had been inquired of by Kenworthy with reference to a bill he (Kenworthy) was about to sell him, and Re Roy informed him that he was worth $2000 or $3000, and was perfectly good. The jury found a verdict for the defendants. The only exception taken by the plaintiff was to the charge of the court respecting the representation to Kenworthy. An order was made that the case be heard in the first instance at the general term.

*M. Schoonmaker*, for the plaintiff.

*E. Cooke*, for the defendants.

HOGEBOOM, J. This case comes here on exceptions ordered to be heard in the first instance at the general term. There was no motion made for a new trial on a case, or on the min-

utes of the judge, and no order made in relation thereto. The case is not open, therefore, to the argument so often pressed in similar cases, that the verdict is against the weight of evidence. (*Code*, §§ 264, 265. *Fry* v. *Bennett*, 16 *How. Pr. R.* 385. *Morange* v. *Morris*, 20 *id* 257, 263, 264.)

The only exception made by the plaintiff, in the case, is a single one to the charge of the judge. The judge charged as follows: 1. That the action was brought to test the title to the property replevied. 2. That if the goods were purchased and procured by Le Roy of the plaintiff upon knowingly false and fraudulent representations, no title passed, and the plaintiff was entitled to recover. No exception was taken to either of these propositions, and they are plainly unobjectionable. 3. That if the plaintiff made or was influenced to make the sale to Le Roy upon the strength of the representations made by Le Roy to Kenworthy, the sale was not for that reason fraudulent, unless the jury further believed that such representations to Kenworthy were made by Le Roy with the intent to be communicated to the plaintiff, and to influence him to give Le Roy credit. To this the plaintiff excepted.

I discover no error in this charge. It was, in substance, that to justify a vendor in treating a sale of personal property as void, and retaking the property, upon the ground of false and fraudulent representations, such representations must be made to him or be made for the purpose of being communicated to him. In other words, false statements made to a stranger, without any intent to influence the conduct of the plaintiff, cannot be made the pretext for avoiding a sale made by the plaintiff, himself. The plaintiff has no right to rely upon statements made to other parties. He cannot know all the circumstances under which they were made, nor the object of making them. For while falsehood, in a moral point of view, is never justifiable, nor wholly excusable, its design and object may be wholly misapplied and unintentiontially enlarged, if made to cover a case, or a party,

never originally meant to be embraced within its operation. Nor is it a fair and legitimate inference that its subsequent communication to a third person (like the plaintiff) was a natural and legitimate consequence of its original utterance, and should therefore have been foreseen by the defendant, and he consequently be held responsible for it. This is not so. The plaintiff, at all events, had no just reason to· believe that the representations were designed to influence *his* conduct, and therefore had no right to make them the basis of his action. It is, I think, of the *essence* of· a false and fraudulent representation that it was designed to influence the conduct of the plaintiff. The fraud must be one perpetrated upon *him.* He has no right to rely upon any other, as the foundation of a business transaction—of a sale of goods. It is, I think, a degree of negligence and rashness which should defeat his action, to pick up the loose and irresponsible declarations of a party, made for a totally different purpose, and make them, without further inquiry, the basis of his own action. It would, in my opinion, be a dangerous rule, and one which has no just foundation in the law or sound reason.

It is upon a different principle, and for a totally different purpose, that cotemporaneous representations, made to others, are admissible in evidence. It is simply as aiding to show the *quo animo* with which the representations to the plaintiff were made. (*Cary* v. *Hotailing*, 1 *Hill,* 316. *Hall* v. *Naylor*, 18 *N. Y. Rep.* 588.) The latter may be to some extent inconclusive or ambiguous upon their face; and it has therefore been considered proper, with a view to throw light upon them, or upon the *intent* with which they were made—which is in its nature a most material question, and often difficult of solution—to admit evidence of false and suspicious statements made about the same time to other persons. And this with a view only to help to a right understanding of the transaction with the plaintiff, and not to create an original and substantive cause of action on his part.

This is the fair reading of the judge's charge; to wit, that representations made to others do not furnish a substantive cause of action to him, unless designed to be communicated to and to operate upon him. If the plaintiff had desired more explicit instructions, he should have sought for them. If he had asked the judge to charge that cotemporaneous fraudulent representations to others, made with a view to obtain from them money or property thereby, were admissible evidence for the consideration of the jury on the question of fraudulent intent affecting the statements made to the plaintiff, he would doubtless have so charged. But no such request was made. And I am opposed to wresting the language of a judge from its natural and obvious meaning and, so understood, announcing a correct rule of law, simply because by a forced and unnatural construction of language it is barely possible that his remarks might have been so interpreted as to convey an erroneous notion of the law. The remedy for such an evil is a totally different but simple and natural one, to wit, to ask for more pointed and explicit instructions.

In reaching this conclusion, I have endeavored carefully to distinguish between a representation which is made the basis of an action, and a representation which is proved simply for the purpose of establishing a fraudulent intent. The first is a substantive cause of action, when accompanied by extrinsic proof of its false and fraudulent character. And this proof may be in fact by showing other representations false and fraudulent, and from them drawing a like inference in regard to the first. The former, as I think, must always be made directly to the vendor of the goods, or for the purpose of being communicated to him. The latter may be made to other persons, being employed merely as evidence of intent. To justify the rescission of a contract on account of fraudulent representations, the contract must be founded upon them—they must be the basis of the contract. It is sometimes said that a purchase of goods is fraudulent when it is

made with intent not to pay for them. But there must be satisfactory evidence of such intent. And this evidence consists in misrepresentations or suppressions of facts *designed* and *calculated* to deceive. I cannot suppose that a purchase of goods could properly be treated as fraudulent, where there has been a full disclosure of all material facts, to the vendor; notwithstanding the purchaser may have cotemporaneously misrepresented or suppressed these facts to other vendors who might have, on account thereof, a valid cause of action. I think the charge of the judge was founded on this distinction, and was therefore unexceptionable.

I am of opinion that there was no error in the charge of the judge, and that the motion for a new trial should be *denied*.

MILLER, J. The judge, upon the trial of this cause at the circuit, among other things charged; that if the goods were sold by the plaintiff to William F. Le Roy upon the strength of the representations made by him (Le Roy) to Thomas Kenworthy, or the plaintiff was influenced to make the sale by such representations to Kenworthy, the sale was not for that reason fraudulent, unless the jury further believed that such representations to Kenworthy were made by Le Roy to be communicated to the plaintiff, and with the intent to influence the plaintiff to give him, Le Roy, credit. Exception was taken by the plaintiff to this portion of the charge.

The object of the evidence introduced by the plaintiff in regard to the representations made to Kenworthy, was to show the fraudulent intent of the party in making the representations which induced the sale. If it is not fairly to be presumed that the judge in his charge so stated to the jury, as I think it must be, it is certainly clear that no request was made to the judge in this respect by the plaintiff's counsel. Assuming that no request was made, then that portion of the charge to which exception was taken must be considered as an independent proposition of itself, entirely discon-

nected from any other portion of it, which was made, or which was omitted to be made, by reason of the failure of the plaintiff's counsel to call the attention of the judge to it.

The question then arises, if the legal proposition embodied in the charge is correct. Upon no hypothesis, it appears to me, can it be claimed that a vendor, relying upon representations made by the vendee to another person, in another transaction and at another time, can, for that reason alone, hold the person making them for fraud. Certainly not, when the representations were not made for the purpose of being communicated to, and there was no intention to influence, the vendor thereby. This species of evidence is not admissible for any such purpose. The action is based upon the representations made by the vendee to the vendor, and it is only to show the *quo animo*, and for no other purpose, that contemporaneous statements of a similar character are admitted in evidence. (*Cary* v. *Hotailing*, 1 *Hill*, 311.) The jury could not have been misled by the charge of the judge, if the doctrine laid down was abstractly correct, as it appears to have been; nor could it in any way have diverted their attention from the real question in the case, whether the goods were purchased fraudulently, which was properly presented to them. As evidence of contemporaneous statements of the purchaser, it was of no consequence if the representations were communicated to the plaintiff. As a proposition, however, in regard to which the judge was doubtless called upon to charge distinctly, it was of some importance if the statements were made with the intent to influence, and for the purpose of being communicated to, the plaintiff. If they were made with any such intent, the effect of the evidence would be greater and more controlling. Conceding that it is of no importance, in reference to the general intent, whether they were so made or not, yet it does not in any way disturb the general principle involved in the charge, that a false representation to a third party, made without any intent to be communicated to and to influence the

Van Kleeck v. Le Roy.

vendor in another transaction, cannot of itself render a sale of property in that transaction fraudulent. So far as the principal facts of the case are concerned, I assume that they have been fairly submitted to the jury, and I do not see how they can in any way affect the question arising upon the exception taken to the charge. While the evidence in the case tends strongly to establish a fraudulent intent on the part of the purchaser, and the verdict of the jury may not be entirely satisfactory, I do not see, after an attentive and critical examination, that any rule of law has been violated.

A new trial must therefore be denied.

PECKHAM, J. (dissenting.) I think the learned justice erred in his charge—that he misled and misdirected the minds of the jury. The sole question at issue and for trial was, did the purchaser buy the goods fraudulently; or, which is held to be the same thing, did he buy with the intent not to pay for them? The charge seems to assume that there was enough in the representations to Kenworthy, if intended to be communicated to the plaintiff with intent to induce the plaintiff to give him credit, to make the purchase from the plaintiff fraudulent. Yet it does not seem to me at all important, in judging of the purchaser's general intent, whether fraudulent or otherwise, to inquire whether the statements to Kenworthy were made to be communicated to the plaintiff. Here was a purchase of goods on the eve of a bad failure, making the stock larger in amount than was usually on hand, (over $8000, and the usual stock only from $6000 to $7000,) and a general assignment made about as soon as the last goods so purchased were brought into the store; and the theory is that the purchases were made generally with the intent to defraud. In some cases, affirmative representations were made. In others, nothing in particular as to the purchaser's condition was said. If a man's intention in such a case were fraudulent, he would of course act differently at different stores. In some, where he had been accus-

tomed to buy and had paid reasonably well, he might be able to buy without making any affirmative representation; there might be only fraudulent suppression. In others, there would be more or less of false representations. They all really constitute but one design—of procuring goods without the intention to pay for them. It seems plain, then, that it is not important whether the representations made to one were made with a view of their repetition to another. They are all admissible in evidence to show the general fraudulent design.

Take a strong case as an illustration. A., being insolvent, confesses a large judgment, and then purchases large quantities of goods which are put in his store on the next day after the purchase, and levied on under the execution issued on the judgment so confessed. His purchases are made, as they are alleged to have been in this case, some by representations, others by suppressions; doing in each so much as is necessary to get the goods. Clearly in that case, as in this, the conduct of the party, in making the different purchases— his statements accompanying the act of purchase—are admissible to show the general intent. And if his statements at any one purchase, made at or about the time of the sale in question, were sufficient to show his general fraudulent purpose, that would be enough to make his purchase fraudulent in another case where he obtained the goods simply by a fraudulent suppression. The very object of introducing evidence of other purchases made at or about the same time, is to show the fraudulent intent. But it has never been held necessary that a vendor should have had notice of the other fraudulent sales before he sold, or that the purchaser should have intended that he should have such notice in order to give them in evidence, as the principle decided at the circuit would seem to require. This doctrine is substantially so held in *Hall* v. *Naylor*, (18 *N. Y. Rep.* 588.) And see *Brown* v. *Montgomery*, (20 *id.* 287.)

Again; suppose a merchant, on his way to purchase goods,

Van Kleeck *v.* Le Roy.

tells his friend confidentially that he is utterly insolvent—without hope or intention of paying—that he owes many confidential debts, and his purpose now is to buy as much as he can on credit, send the goods to his store, and then immediately make an assignment to secure his confidential debts. He does it. Such purchases, we agree, would be fraudulent. Is there any doubt of the admissibility of his declarations to his friend, or of their sufficiency to establish the fraud, without their having been repeated to a vendor ? or without their having been intended for repetition ?

Does it make any difference in this case that they were made to another vendor, instead of to a third person ? In principle, none whatever. Falsely stating to one merchant, where it seemed necessary to effect the purchase, that he, the purchaser, was worth a large sum over all debts, which he well knew to be false, may as effectually show his intent to defraud (taken in connection with subsequent conceded facts) as the statements before referred to, made to a friend.

If the rule as laid down at the circuit shall be upheld, it will secure impunity to the greatest frauds, and their easy accomplishment.

The true question at the trial seems to have been lost sight of, in an examination of the *plaintiff's* motives and inducements in making the sale, instead of inquiring into the purpose of the purchaser. Certainly no question could legitimately have arisen as to the plaintiff's motives. It is not pretended that the plaintiff knew the condition or purpose of the purchaser, and chose to take the risk.

A new trial should be ordered, with costs to abide the event.

New trial denied.

[ALBANY GENERAL TERM, May 5, 1862. *Hogeboom, Peckham* and *Miller,* Justices.]