## Brett *vs.* Catlin and others.

Where the question is whether a sale of goods was made to the plaintiff, by the owners, for the purpose of defrauding their creditors, evidence to show that about the time of the sale; and just before their failure, the vendors employed the witness to carry goods from their store to other stores or places of deposit, for the purpose of fraudulently concealing their property from their creditors, is not admissible, where it appears that the goods were turned out to the plaintiff in payment of a just debt. Clerke, J. dissented.

If a debt is an honest one, debtors have a right to prefer it, and pay it by the appropriation of their property; and the validity of the debt can not be dis-

Brett *v.* Catlin.

proved by showing the existence of an intent on the part of the debtors, to defraud other creditors, or even by proof of actual fraud in respect to the latter.

As a general proposition, proof of willful and corrupt perjury as to one material fact in a case, renders a witness unworthy of credit as to any other matter to which he may have testified. But he may be corroborated; and being corroborated, he may be believed.

THIS is an action for taking and converting a quantity of hardware, claimed to be the property of the plaintiff. The defendants justified the taking under an attachment issued in an action in the Superior Court against Dwight E. Ray and James D. Ray, composing the firm of Ray Brothers. Ray Brothers were dealers and jobbers in hardware in the city of New York, and failed in November, 1860, largely insolvent. The defendants' attachment was issued in June, 1861. Other creditors had previously issued attachments. The goods in controversy were conceded to have been once the property of Ray Brothers, but the plaintiff claimed to have taken them, after their failure, as a sort of *cestui que trust*, in the first instance, in November, 1860, by a mere verbal pledge to Edwin C. Ray, as a collateral security for an indebtedness of the firm to the plaintiff, and to have subsequently (February 2, 1861,) taken them absolutely in payment, by a bill of sale dated November 15, 1860.

On the trial, at the circuit, the defendant called, as a witness, John G. Vanderbilt, who testified that he was a carman; that he knew Ray Brothers, and was a carman for them in 1860, to the end of their business; that he recollected when they failed; that he recollected having carted goods for them, just prior to their failure, to different places in the city. The witness was asked, "what goods, and whereabouts?" The plaintiff objected to the question, and the objection was sustained. The defendants excepted, and stated that they offered the testimony for the purpose of showing that Ray Brothers, just previous to their failure, stored goods at various places in the city, for the purpose of concealing them from their creditors. The defendants offered to prove

---

Brett *v.* Catlin.

---

the same facts by another witness, S. Holmes. The plaintiff objected; objection sustained; and the defendants excepted. The defendants' counsel also offered to prove the plaintiff's declarations made in 1859 and 1860, of his poverty, and that the money which was in Brooks' hands, and which Brett swore was all loaned by his father-in-law, and out of which he had made the loans to Ray Brothers, was money coming from the assets of the plaintiff's firm; and that Brett had deposited those assets with his father-in-law, who had paid them from time to time to Brett, or had deposited them with Brooks. This offer was made for the purpose of contradicting Brett; and to show that Brett had no money to loan to Ray Brothers, and wanted all he had to pay his own debts. The testimony was objected to by the plaintiff, excluded, and the defendant excepted.

The jury rendered a verdict for the plaintiff, and a motion was subsequently made at special term for a new trial, and denied; whereupon judgment was entered, and the defendants appealed to the general term.

*A. R. Dyett*, for the appellants.

*Henry A. Cram*, for the respondent.

MULLIN, J.   There are but two of the numerous questions raised on the argument that are worthy of consideration. These are: 1st. Was the evidence of Vanderbilt, as to the removal and concealment of goods by Ray Brothers, admissible; and 2d. Was the refusal to charge that if the plaintiff had willfully sworn falsely that he bought and owned all the property at 115 Liberty street, the rule *falsus in uno falsus in omnibus* applies, and the jury were bound to disregard his evidence, erroneous.

The plaintiff gave evidence tending to prove that the property in question was in the first place turned out to him as security for his loans to them, and subsequently it was sold

Brett *v.* Catlin.

to him in payment of such debt. After the transfer, the defendants seized the property, and for this seizure this action was brought. It was proposed by the defendant to prove by Vanderbilt and others, that about the time of this transfer, the debtors, Ray Brothers, employed him (V.) to carry goods from their store to other stores or places of deposit, for the purpose of fraudulently concealing their property from their creditors. This evidence was objected to by the plaintiff's counsel and rejected.

Assuming the facts to be as the defendants offered to prove them, do they tend to show fraud in the transfer to the plaintiff? It seems to me not. If the plaintiff's debt was an honest one, (and the jury have so found it to be,) Ray Brothers had the right to prefer it, and pay it by the appropriation of their property. The validity of the debt can not be disproved by showing the existence of an intent to defraud other creditors, or even by proof of actual fraud towards them. While the plaintiff is able to show that his debt is *bona fide*, no act of the debtors, in reference to their property, other than that transferred to the plaintiff, can impair its validity. I think the evidence was properly rejected.

As to the other point, I have entertained more doubts. As a general proposition, proof of willful and corrupt perjury, as to one material fact in a case, renders a witness unworthy of credit as to any other matter to which he may have testified. But he may be corroborated ; and being corroborated, he may be believed. The learned judge was requested to charge the general proposition as I have stated it, and he refused, but told the jury that such false swearing went *"greatly to discredit his testimony, and to impeach him in considering the rest of his evidence."*

The learned judge does not tell the jury that they may credit the witness if he is corroborated ; but he was not asked to so charge, and the defendant's counsel can not now complain of the omission.

There are in the case facts which tend directly to corrobo-

rate him, such as the notes, &c. and the testimony of Ray and others, upon the facts before the jury. Therefore, the general rule of law stated by the counsel in his request to charge had no application; and the judge was right in refusing to charge it, unless modified. No modification was suggested, and I am of opinion that the charge was right, upon the facts proved, and the judgment should be affirmed.

INGRAHAM, J. concurred.

CLERKE, J. (dissenting.) The only exceptions taken, on behalf of the defendants, which are worthy of any consideration, are those comprised in folios 224, 264 and 265 of the case. [Relative to the declarations of the plaintiff in respect to his poverty at the time when he claimed to have made the loan to Ray Brothers, and the testimony of Vanderbilt, as to his having carted goods for Ray Brothers, just before their failure.] The defendants, throughout the trial, disputed the genuineness of the alleged indebtedness of Ray Brothers, to the plaintiff. Therefore they had a right to prove that he had made statements which tended to show that he had no money or means, at the time when he said he had made the loan which caused the alleged indebtedness. This, of itself, perhaps, would not have been conclusive. But taken in connection with the evidence, particularly that which was offered subsequently, and also, I think, improperly rejected, enough might have appeared to convince the jury of the spuriousness of the plaintiff's claim; and that it was fabricated merely for the purpose of enabling Ray Brothers to defraud their genuine creditors — the defendants in this case, among the rest.

The defendants proposed by the evidence offered, and which, as I have said, was excluded, to show that Ray Brothers, who had transferred the property in question to satisfy this alleged debt, had made a fraudulent disposition of other property, just previous to their failure, by storing

the goods at various places in the city, for the purpose of concealing them from their creditors. Ray Brothers failed early in November, 1860; and not long after their failure (19th November,) they placed these goods in the hands of their brother, E. C. Ray, to hold for the plaintiff, in a warehouse in Liberty street. The plaintiff says he went down to the store, and took possession of them. Afterwards, (February 2, 1861,) the plaintiff received a bill of sale of these goods from the defendants. In my opinion, taking possession of the goods, in November, and the more formal transfer of them in the subsequent February, may be considered as constituting one transaction. So that the transfer of the goods to the plaintiff, and any other acts of Ray Brothers, about the time of their failure, may be deemed contemporaneous. Can not these acts be received in evidence as tending to show fraud in the transfer of the property in question? The acts which the defendants offered to prove are similar to the first step in the transfer in question. They relate to the storage of goods; and, as I have said, they are contemporaneous. The offered testimony presents these two essential elements to entitle it to admission. Can it be received against a transferee or vendee without first impeaching, or at least casting some well grounded suspicion on, his good faith. The principal cases on this subject, in the Court of Appeals, are *Hall* v. *Naylor*, (18 *N. Y. Rep.* 588;). *Hennequin* v. *Naylor*, (24 *id.* 139;) and *Hathorne* v. *Hodges*, (28 *id.* 486.) In the first of these cases, the defendant was the assignee in trust of the alleged fraudulent purchaser, and took the goods for the purpose of applying them to the payment of previous liabilities. He, therefore, could not have been protected against the fraudulent acts of his assignor. Besides, there was testimony tending to show that the defendant was cognizant of the alleged fraudulent design of his assignor, in purchasing the goods from the plaintiff.

In *Hathorne* v. *Hodges*, although both the judges who delivered opinions made no allusion to the circumstances, there was proof of connivance between the fraudulent purchasers of the shares from the plaintiff. So that I think it is now well established that similar contemporaneous acts, tending to show fraud in the first purchase, may be received at the trial, against a subsequent vendee or assignee, who either participated in, or was cognizant of, the fraud, or who received the property as security for, or in payment of an antecedent debt.

The goods, in the case before us, it is alleged, were received by the plaintiff as security, in the first instance, and subsequently, in payment of loans of money alleged to have been made at four different times, between May 16, and July 20, 1850; they were put into the hands of Edwin C. Ray, for the security of the plaintiff, as I have already said, about the 19th of November, 1860; and about the 2d of February, 1861, they were taken by the plaintiff in payment of these alleged loans; and the defendant offered to impugn the genuineness of the alleged debt. The judge, therefore, erred in excluding the questions put to the witnesses Vanderbilt and Holmes, as well as in excluding the evidence offered previously.

The judgment should be reversed, and a new trial ordered; costs to abide the event.

Judgment affirmed.

[New York General Term, November 5, 1866. *Ingraham*, *Clerke* and *Mullin*, Justices.]