By the Court,
Robertson, Ch. J.
The pleadings in this case agree in their statement of the fact of a promise by the defendants to pay the plaintiff’s assignor a portion of their net profits upon certain articles of merchandise, but differ as to the proportion. They differ, also, both as to the consideration or motive for making such a promise, and the existence of a qualification of it. The complaint alleges the consideration to have been a future collection of information by Griffith; the answer, a communication of information then possessed by him. The promise in the complaint is absolute and unqualified ; that in the answer is conditional, and made to depend upon the truth of representations made. The answer claims the avoidance of such promise by fraud in obtaining it.
The arrangement between the parties was evidently not a copartnership as between themselves, since, by it, Griffith acquired no interest in the goods bought, was not liable for any losses, and the part of the net profits received by him *389 was compensation for information, either then communicated or to be afterwards communicated. The variance between the shares of the profits promised, as set out in the complaint and answer, was not material as to the right to recover something, as, whichever was correct, the plaintiff was entitled to recover whatever it was, if there were no other objections.
The mere addition of the condition set forth in the answer to the promise of the defendants, would not defeat the plaintiff’s right to recover under the complaint, although it might impose upon him the necessity of establishing in advance the truth of Griffith’s representations. It would, however, he repugnant to any claim that the promise was made on the faith of the truth of such representations. Being made part of the contract in which all prior negotiations are merged, covering precisely the same ground as such representations, it would be more effectual in its protection of'the rights of the defendants, and form a stronger barrier against fraud, than even rescinding the contract on such ground. For it throws upon the promisee the burden of proving the truth of his representations, and renders it unnecessary for the promissor to show guilty knowledge on the part of the former, and thus renders proof of fraud unnecessary and immaterial. It would be illogical to predicate fraud in making it, of a contract, by whose very terms the truth of the matter alleged as a deceit, is made a condition of its obligation. Possibly, where damages had ensued from acts done under such a contract, fraud might be given in evidence to enhance them ; but where a conditional contract rests in fieri, and nothing has been done, or is to be done, under it, until its final performance, and any question arises as to its obligatory character, proof of fraud is superfluous, at least, until the occurrence of the contingency constituting the condition is' established.
These considerations press themselves upon us, because the promise made by the defendants is found in the report of the referee to have been a conditional one, precisely as alleged in the answer, and following its very words. As such report also finds, as a fact, that the representations, on whose truth *390 the obligation of such contract was thus made to depend, were untrue, any evidence of such conditional contract would end every question as to such report; for the referee must be held to have pronounced his judgment upon the supposition of the making of such conditional contract, unless there be something in his report to show the contrary. But I have looked, in vain, through the evidence, for any proof as to the attachment of such a condition to the obligation of the contract, although there was some of a similar one prior to its making. The defendant James K. Place, who alone made the contract, does not state that any such condition was attached. He simply states that, after Griffith had made his statements and communicated all his information, and the proportion of profits to be given as compensation for such information was fixed, he himself said, they, the defendants, “ would agree to it/’ adding no qualification thereto. On his cross-examination he stated, substantially, the same thing, only adding, “ if the information was of value.” The finding, therefore, that the contract was conditional, is not borne out by the evidence, and if the report is only sustainable on that basis, it should be set aside.
But whether the attachment of a condition to the contract is to be disregarded, or proof of fraudulent misrepresentations be equally admissible and available to avoid it whether such condition had not or had been attached, (which the learned referee seems to have assumed, since he rests his decision on only one conclusion of law, to wit, that such misrepresentations avoided the contract,) it becomes necessary to look at the evidence of the making of such statements as are alleged in the answer. Upon that point it cannot be questioned that, by well settled laws of evidence, the proof of the affirmative rests on the defendants, as such statements formed no qualification or part of the contract, but were extrinsic matter, forming part of the elements by which it might be defeated, if they were established. And I cannot but think, that the learned referee suffered himself to be misled on that point, and -did not keep in view, in reference to the burden of proof, *391 the distinction between the evidence relating to the terms of the contract- itself and that relating to extrinsic matters affecting it, such as the making and falsity of the representations in question. In the opinion accompanying his report he commences by assuming that, “ if the conversation (between the defendants and the plaintiff’s assignor) was such as the defendants say it was, no' such contract was made as was set out in the complaint ; and * * * * * ' the contract actually made was made void by reason of the representations made by Griffith being untrue.” But, as I have already shown, so far as the plaintiff’s cause of action was concerned, the promise of the defendants, as stated by both parties, (unless the- amount and condition referred to be taken into consideration,) was substantially the same. If, in the terrh “ contract,” the learned referee included the promise of Griffith, set forth in the complaint, to procure information, of course that was not the same, but that did not take away the plaintiff’s right to recover. The referee then proceeds to lay down, as a principle,, that “unless there be something in the residue of the testimony tending strongly to corroborate Mr. Griffith, and to discredit the accuracy of the defendants’ recollections or their honesty as witnesses in the action, the plaintiff has failed to establish the cause of action stated in the complaint. The burden of proof is on the plaintiff to establish his case. This cannot be said to have been done in this case, unless, upon a fair view of the whole evidence, there is a clear preponderance in favor of the plaintiff.” This, evidently, implies that the plaintiff must disprove by preponderating evidence, the malcing of the representations, and the subsequent part of the opinion fully corroborates this view. For, after analyzing the testimony of the two defendants and their brother, (Charles Place,) the referee examines the question whether their acts or the other testimony in the case, or both, “ tend so strongly to discredit their memory, or honesty as witnesses, that th % plaintiff’s testimony should be accepted as accurate and the defendants’ treated as erroneous.” He concedes that both parties, in testifying, believed the truth of *392 what they stated. After weighing probabilities of the truth bf the statements of the parties, he considers the testimony of the defendants as reconcilable, and concludes that it ought not to be discredited. Although he “ saw nothing in the conduct of Griffith, as a witness, to lead ” him “ to suspect that he did not testify in good faith,” he still considered his testimony incompatible With that of Mr. Charles Place, in reference to a contract not involved in this action. And the learned referee finally arrives at the conclusion that no such contract was made as that stated in the complaint, but only that stated in his findings of fact. From this synopsis of the course of reasoning of the referee, it is impossible to escape the conclusion that he considered, either that it was indispensable for the plaintiff to establish the consideration stated by him for the promise of the defendants, as part of the contract, or that the representations mentioned in the answer formed a part of it and that the burden of the proof, or rather disproof, of having made them, lay with the plaintiff. Either principle Was erroneous, for the reasons before assigned.
But it may be said that the legal results of the referee’s decision depend upon his findings of fact and conclusions of law, and cannot be controlled by his mere opinion, which forms no part of the record ; that his report must be sustained, if upon any facts of which there is any evidence, and the application of any correct rules of law to them, the defendants were entitled to judgment. Such a rule would be difficult of application, where a mere erroneous rule of evidence had been adopted, without any error as to- the legal rights of the parties. " Possibly, there may be some mode of procuring the insertion of the rule of evidence so adopted among the conclusions of law., But, in any event, where the only evidence is conflicting and of equal weight, with no circumstances to detract from the weight of, or corroborate that on either side, and where the determination of the facts in issue either way, must depend upon who has the affirmative, the court has a right to infer that the ultimate finding, if not in favor of the party having the negative, was based on a wrong rule of evidence.
*393 The defendant (James K. Place) was the person with whom the plaintiff’s assignor made whatever agreement was made, and the only person who testifies to the representations, upon the faith of which, it is alleged that it was made. His brothers, the other defendant (E. B. Place) and Charles Place, testified to similar representations at or about the same time, and such testimony seems to have been referred to, in order to corroborate, his. The testimony of Mr. Charles Place, as to representations to him, on which he made.a contract with such assignor with whose terms he complied, although at first excluded by the referee, in consequence of an objection by the plaintiff’s counsel, was ultimately admitted by their consent. This admission by consent, however, will of course not make it relevant as evidence upon issues upon which it would otherwise be irrelevant, and, at most, only waives the exception. The learned referee seems to have considered it available, not only to corroborate the testimony of the defendants as to similar representation to them, but to impugn the veracity or memory of Griffith, by contradicting a statement by him on his cross-examination, that he had never made such statement to Charles Place. Its availability for either purpose depends entirely upon its admissibility as a corroboration of the defendants’ statement, otherwise it was on a collateral subject, and the answer of Griffith must be received as conclusive. Such transaction with Charles Place was not established to have been fraudulent, even if the representations were precisely the same. It related to other articles, a share in the profits on one of which, (sardines,) was paid by Place to Griffith, without a demur. Even if it had been fraudulent, I am not aware that the rule of evidence admitting cotemporaneous similar acts as evidence of fraudulent intent, (Cary v. Hotailing, 1 Hill, 311; Hall v. Naylor, 18 N. Y. Rep. 588; French v. White, 5 Duer, 254;) has ever been extended so far, as to make similar contracts evidence of similar representations, for it is only to the question of intent, after other proof of such representations having been made has been adduced, that it is applicable. If not admissible as corroborative *394 evidence, the question put to Griffith, on his cross-examination, as to making such statements to Charles Place was merely as to collateral matter, and not as if it had related to admissions made by him of his representations to the defendants. His answers were therefore conclusive. Besides, the credibility of both witnesses was equally balanced.
The testimony of the defendant, Ephraim B. Place, shows .that no contract was made while he was present. His interview with Griffith, in which the latter, (according to his statement,) disclosed all the details of the information he professed to have, ended in that defendant’s merely referring him to his brother. Such representations evidently formed no inducement to the contract, as the witness said he never conferred with his co-defendant respecting them, or heard him say there was a contract. He only knew that goods were bought under some contract with Griffith. That interview only lasted from five to ten minutes. After it, Griffith had no means left to secure a share of the profits by withholding his information, and had only obtained an expression of willingness to join in an arrangement, if his brother would consent. This is hardly corroborative of an agreement made with another person next day, on the faith of representations then made and entered into, in consideration of the disclosure contained in such representations. So that after all, the whole proof of the making of them rests on the testimony of Mr. *James K. Place, the defendant.
[The court then entered into a minute and critical analysis of the testimony of that defendant, and then proceeded.]
The defendant did not accede to the proposition upon the terms as adjusted, until after Griffith had disclosed the name and position of his informant. This corresponds with the answer of the defendants, in which they make their promise to pay, the result of a previous disclosure by Griffith of all he knew, and its performance a compensation therefor. This would deprive such promise of all legal consideration, and make it entirely gratuitous.
I do not, however, discover in the testimony of J. K. Place, *395 any statement that Griffith ever said, as alleged in the answer, and found by the report of the referee, that he “ positively knew,” that the committee in question “had agreed to recommend to the house of representatives the passage of a law, increasing ” the rate of duties upon the designated articles. His statement was that such committee, or, “in general terms, congress would place a large duty” on them, which was merely prophetic, conjectural, or promissory, and did not assert an existing fact or past occurrence. And he immediately not only stated his knowledge to be on information, but gave the name and position of his informant, being (as J. K. Place testified on his direct-examination) the president’s private secretary, and also secretary of such committee. Griffith plainly asserted nothing of his own knowledge, but that everything stated by him was on information, whose reliability was placed upon the • position and means of knowledge of his informant. The defendants were not content to rely simply on his statement of the fact represented, but demanded the source of his information, on which they evidently most relied, as they inquired of a witness (Hussey) whether it was reliable. The representation, therefore, if any, on the faith of which they made their promise, was the communication of such information by the secretary of such committee (Stoddard) and not the resolution of' the committee itself. All that was stated by Griffith would have been true, if such secretary had made such communication to him, and there is nothing in the case' to disprove it, whatever had been the act or omission of the committee. Yet no such issue was made or tried, but one which went straight to the conduct of the committee itself, without regard to Griffith’s means of information. Upon the issue actually made and tried, evidence that the secretary had so informed Griffith would have been immaterial, even on the question of fraudulent intent, because it was personal knowledge that was at issue, not merely a reasonable ground of belief. The finding of the referee, therefore, that Griffith had no reason to believe the representations made by him were true, or that he had not been informed that the committee in *396 question had agreed to recommend the passage of a law fixing the rate of duties on imported spices at the prices stated by him was immaterial, and unsupported by any thing, unless the mere absence of evidence be sufficient. In fine, there was no affirmative evidence sustaining the allegations in the answer as to the character of the representations (if any) made to the defendants, to induce them to make the promise sued upon.
But, even if all the allegations in the answer as to such representations had been positively testified to by the defendant, James K. Place, there are, besides their positive denial by Griffith upon the stand, (which would have required a finding against them for want of a preponderance of evidence in their favor,) one or two circumstances which detract from the reliability of Mr. Place’s statement.
On the 9th of March, about three weeks after the making of such contract, and some days before the last purchase under it was made, the very secretary, as to whose statements such representations related, wrote in a letter to Griffith : “ The committee have not fixed their figures absolutely and irrevocably upon any article, but have discussed the subject of teas ■and spices freely. They have decided that those articles must and shall stand a very large additional tax.” That part of such letter Griffith testified positively that he read, about the time he received it, to the defendant, James K. Place, while the latter was only able to state that he could not remember whether he had ever done so or not. So, too, the same secretary wrote to the plaintiff, then engaged in procuring information for Griffith, in a letter to him, dated March 21, 1864, (which was after the last purchase :) “You demand points and figures on articles to which no allusion has yet been made by the committee of ways and means. Tell your men not to be discouraged; they shall have all the points as fast as they are made in the committee. * * Tell them they cant have the figures till the committee fix them, or come so near it that I feel safe in giving them the points.” Griffith testifies that he also read this letter to the same defendant, *397 which the latter does not deny, hut says he cannot recollect it. In such a case, other things being equal, the positive recollection must prevail. And, although such letter to the plaintiff does not allude to spices, yet it would naturally have excited the defendant to inquire what it referred to, in which he was interested, particularly succeeding, as it did, the other letter.
Such letter to Griffith, of the 9 th of March, plainly showed that the committee had not resolved on any thing definite ; and if Griffith had made different representations, its reading ought not only to have made some impression on the memory of such defendant, but have induced him, at that time, to charge Griffith with duplicity, notify him of a rescission of the contract for fraud, and discontinue all operations under it. The fact that he did neither, goes far to show that such positive statements as he testified to were never made. The learned referee, feeling the force of this view, urges, in his opinion, in reply, that there was no certain evidence, at what time Griffith received the letter of the 9th of March, what part of it he read to the defendant, and when ; that he did not pretend to know when he received it; that there was no entry on it of the time of its receipt; that he did not allow the defendants to read it, and only- read such parts of it as he saw fit; and that he made no entry on it of the parts he read. As to not permitting the defendants to read it, it appears that it contained allusion to other matters, and the hearing it read, was as good notice of its contents as if it had been read by the defendants. As to the time of the receipt of the letter, its reading, and the parts read, the testimony of Griffith, which is the only evidence on those subjects, was in substance as follows : That he received such letter- in due course of mail, and "showed it at once to the defendant, as he made it a point always to do ; and read it to him on the day he received it; and that he read all contained therein that related to the duties on spices, there being other matters therein; and that such was his habit. Allowing two days for receiving the letter from Washington, there was sufficient evidence of all the important *398 part of it having been communicated to the defendants before the 14th of March, when the last purchase was made. But whenever received or read, it should have awakened the indignation of the defendants at the fraud attempted to be perpetrated, and have induced them forthwith to have notified Griffith of a rescission of the contract. But they went on, selling the spices, which they had bought, as they state, relying upon such information, and making large profits, but never notified Griffith that the contract was at an end, until his assignee (the plaintiff) was referred, when he made a demand, to their counsel, without a word of explanation.
Griffith’s statement of what passed in making the contract is corroborated by evidence of his receipt of similar information from Stoddard, through the plaintiff, the continuance of the plaintiff’s efforts to procure further information, and his arrangements for the purpose, as well as the facilities possessed by those on whom he relied for getting information. While, on the other hand, allowance must be made for a probably innocent exaggeration by him in his representations of the certainty of the result, which may, in the memory of the defendants, disappointed in their expectations of greater gain, and unconscious of the precise foundation on which they rested, after the lapse of nearly two years, have been converted into the supposition that it was the assertion of an undeniable fact. The testimony of the parties might be reconciled on such a supposition. At all events, the plaintiff ought not to be deprived of whatever rights he has, under the promise of the defendants to pay his assignor a proportion of their profits, merely upon such evidence as that before us of untrue representations made to obtain such promise. I have not deemed it advisable to consider the question of illegality of the contract, as it does not appear what it was from the report of the referee.'
The judgment should be reversed, the order of reference vacated, and a new trial had, with costs to abide the event.
McOunn, J. concurred.