# WILLIAM H. VAN KLEEK v. PHILIP LEROY AND WILLIAM H. DEYO.

*Fraudulent Representations—Third Party—Evidence of Intent to Defraud.*

Upon the question of intent to commit a fraud by the purchase of goods upon credit, it is competent to prove that the same party made fraudulent purchases from other parties, about the same time: such evidence is deemed proper for the purpose of establishing the intent with which the purchase in question was made.

THIS action was brought to recover certain goods on the alleged ground that they had been purchased by William F. Leroy, under fraudulent representations as to his circumstances and responsibility.

A few weeks after the purchase, Leroy made an assignment for the benefit of his creditors to the Defendants. The property, which consisted of groceries, &c., was replevied from the Defendants shortly after the assignment.

It appeared on the trial that William F. Leroy had for some time been dealing with the Plaintiff, and purchasing on credit. That on the 5th December, 1860, he purchased the goods in question. That, at the time of the purchase, Leroy remarked to the Plaintiff, that he was responsible for all the goods he would buy, and was good enough for it.

The Plaintiff made inquiries of others about him. Among them was Mr. Kenworthy. Before he sold him the goods, Leroy had been inquired of by Kenworthy, with reference to a bill he (Kenworthy) was about to sell him, and Leroy informed him that he was worth $2,000 or $3,000, and was perfectly good.

The jury found a verdict for the Defendants. The only exception was to the charge of the Court, respecting the representations to Kenworthy. The Judge charged as follows:

1. That the action was brought to test the title to the property replevied.

2. If the goods were procured from the Plaintiff upon false and

fraudulent representations by Leroy, of his solvency, no title pass-
ed, and the Plaintiff was entitled to recover.

3. That if the Plaintiff made, or was influenced to make the
sale, upon the strength of the representations made to Ken-
worthy, the sale was not for that reason fraudulent, unless the
jury further believed that the representations were made to Ken-
worthy with intent that the same should be communicated to her
Plaintiff, and should influence his conduct.

To the latter part of the third item of the charge the Plaintiff
excepted. The General Term of the Third District affirmed the
judgment at the Circuit, and the Plaintiff now appeals to this
Court.

*M. Schoonmaker* for Appellant.
*Erastus Cooke* for Respondents.

HUNT, J.—The general principles involved in the question now
before us are well settled. A purchase of goods upon fraudulent
representations of the situation of the buyer, gives no title to the
fraudulent vendee. A purchase of goods, with the preconceived
design not to pay for them, is a fraudulent purchase, subject to
the same consequences. An actual insolvency at the time of the
purchase, but accompanied with an honest expectation, on the
part of the purchaser, that he will be able to retrieve his for-
tunes, and where no representation is made, does not necessa-
rily create a fraud (Hall *v.* Naylor, 18 N. Y. R. 588; Nichols *v.*
Pinner, id. 295; Hennequin *v.* Naylor, 24 N. Y. R. 139; Cary
*v.* Hotailing, 1 Hill, 311).

It has been repeatedly decided in this State that, in such cases,
evidence of fraudulent purchases from parties, other than the
Plaintiff, might be proved on the trial, to establish the purpose
and intent with which the purchase in question was made.

Thus, in Cary *v.* Hotailing (supra), Judge Cowen said (p. 316):
" On questions of intent to defraud, other acts similar to the of-
fence charged, done at or about the same time, or when the same
motive to offend may reasonably be supposed to have existed, as
that which is in issue, are admissible with a view to the quo

animo. The case of fraud is among the few exceptions to the general rule, that other offences of the accused are not relevant to establish the main charge."

In Hall v. Naylor (sup.), Judge Comstock says: "On the trial of such an issue the quo animo of the transaction is the fact to be arrived at; and it is, therefore, competent to show that the party accused was engaged in other similar frauds, at or about the same time. The transactions must be connected in point of time, and so similar in their other relations that the same motive may reasonably be imputed to them all."

It was accordingly held that a representation made to a former seller, who had become alarmed, but where debt was not due, was not competent evidence.

In Hennequin v. Naylor (sup.), after laying down the general rule, Judge James says: "In cases where there is no overt act of fraud, it is often very difficult to prove a dishonest purpose. In all such cases, instead of proving false representations, or other fraudulent practices, resort is had to various incidents and circumstances which are calculated to exhibit the hidden purposes of the actor's mind. So in this case: Kerr and Adams were not guilty of any overt act of fraud in the purchase of the goods sought to be recovered; nor did they make any representations as to their pecuniary condition, and hence proof was made of their pecuniary situation, the facts and circumstances connected therewith, and their acts and conduct in relation to their other purchases, and as to this purchase, in order to determine the motive and intent with which it was made."

In each case, as it is presented in Court, a substantial cause of action must be established by the Plaintiff. He must prove a purchase and a fraudulent intent existing in the mind of the purchaser, when he purchased the goods, to obtain the property without paying for it. This may be done by proof of direct statements, which are shown to be untrue, or by proof of circumstances tending to the same result. In the case before us, the purchaser made a direct representation, as testified to by the Plaintiff, which would have justified the jury in finding that the pur-

chase was fraudulent. The Judge charged, in relation to this point, that if the goods were purchased by statements which were false, and known to be so by the purchaser, no title passed.

This was a sound exposition of the law, and was all that either party had a right to ask.

It was said, however, that the purchaser had made a fraudulent representation to Mr. Kenworthy, upon making a purchase from him, at about the same time. Proof of this fact was made, and it would have been erroneous to have excluded it. It was competent evidence of a distinct offence, to establish the quo animo in the case in hand.

It was not, however, of itself competent to establish the Plaintiff's cause of action. On the trial of a prisoner charged with passing counterfeit money, it is competent to prove that the accused offered similar money at about the same time to other persons, but upon the question of intent only. Proof that he attempted to pass his spurious money upon a dozen other persons would afford no legal evidence that he had passed it to the prosecutor, or that it was spurious. These are the points in issue to be first established by independent evidence, and when established the intent may be aided by the extrinsic transactions. There is no legal connection between an attempt to cheat one person and an attempt to cheat another. Nor is there any legal objection to the idea that a counterfeiter or a purchaser may intend to cheat one person, and not wish or intend to cheat another.

The fraud upon the Plaintiff here must be established by competent proof. An attempt to defraud Kenworthy affords no legal evidence that the same man attempted to defraud Van Kleek. An undisciplined mind might say that if Leroy would cheat one man, he would cheat another; and it appearing that he cheated Kenworthy, I will assume that he cheated the Plaintiff. This, however, is neither law nor logic.

The authorities I have cited show that this fact was competent to be proved, as bearing upon the motive and intent of Leroy in making the purchase. It was a balanced case. The Plaintiff proved representations, as well as numerous facts and circumstances, tend-

ing to show that Leroy intended to defraud him in making the purchase.

The Defendants showed various facts and circumstances tending to re-establish the good faith of the purchase. That being the precise point in controversy, it became quite important to establish the fraudulent representation to Kenworthy.

If he had attempted to cheat him, the jury could give such effect to that fact as they thought proper, in determining the question of good or bad faith then before them. This fact the jury had, and this was all they were entitled to.

To hold that the fraud upon Kenworthy, which was not committed upon the Plaintiff, and the statement upon which it was based, was intended by the purchaser to be communicated to him, established the Plaintiff's cause of action, would be going beyond any reported case, and beyond all sound principle (Allen *v.* Addington, 7 Wend. 9).

The representations must be made to the seller (when representation is the mode of fraud resorted to), or must have been intended to be communicated to him. Statements to a stranger, not intended for the Plaintiff, cannot give a ground of action. Each case depends on its own circumstances, and must be decided upon its own facts.

Judgment should be affirmed.

All affirm, except GROVER, J.

GROVER, J. (dissenting).—The question, for the determination of the jury in this case was, whether Leroy purchased the goods in question with the fraudulent intent of not paying therefor, and thus of defrauding the Plaintiff of their value. The Plaintiff, among other things, gave evidence tending to show that Leroy, at about the time of the purchase in question, purchased goods of one Kenworthy, and, as an inducement to Kenworthy to make the sale, made false and fraudulent statements as to his pecuniary circumstances and ability to pay for the goods so purchased, which statements were communicated by Kenworthy to the Plaintiff before the sale to him.

The Judge charged the jury, that if the goods were purchased by Leroy of the Plaintiff, upon false and fraudulent statements to him by Leroy, he knowing them to be false, and that he procured the goods upon such false representations, no title passed.

The Judge further charged, that if the goods were sold by the Plaintiff to Leroy, upon the strength of the representations made by Leroy to Kenworthy, or the Plaintiff was influenced to make the sale by such representations to Kenworthy, the sale is not for that reason fraudulent, unless the jury further believe that such representations to Kenworthy were made by Leroy to be communicated to the Plaintiff, and with the intent to influence the Plaintiff to give him (Leroy) credit.

The Plaintiff's counsel excepted to this latter portion of the charge. Had the action been to recover damages of Leroy for inducing the Plaintiff to sell him goods upon credit, by false and fraudulent statements, this portion of the charge would doubtless have been correct. In such a case, the statements must be made to the Plaintiff, either by the Defendant himself, or by his authority. But this was an entirely different case. The question in this case was whether the Defendant made the purchase in question with the fraudulent intention of cheating the Plaintiff out of his goods, by not paying therefor.

In this class of cases, other purchases made fraudulently so near the time of the one in question that the purchaser may be presumed to have acted upon the same design, may be given in evidence to show the intention with which the one in question was made, or, at least, as reflecting some light as to such intention (Hall *v.* Naylor, 18 N. Y. 588, and cases cited). For this purpose it is immaterial whether the statements made upon the other purchases were communicated to the vendor previous to the sale or not. True, if made with the design of their being communicated, it might add somewhat to the force of the evidence; but even this might depend upon other circumstances. In the present case, from that portion of the charge not excepted to, taken in connection with that excepted to, the idea conveyed to the jury was, that the fraudulent statements made to Ken-

worthy, upon the purchase from him, were not material, unless communicated to the Plaintiff, by the authority of Leroy, previous to the purchase from him. This was error.

The judgment must be reversed, and a new trial ordered.
Affirmed.