H<small>ISCOCK</small>, Ch. J., H<small>OGAN</small>, P<small>OUND</small>, C<small>RANE</small> and A<small>NDREWS</small>, JJ., concur; C<small>ARDOZO</small>, J., not voting.

Ordered accordingly.

---

H<small>ARRY</small> A<small>LTMAN</small> et al., Copartners under the Firm Name of A<small>LTMAN</small> & G<small>RODIN</small>, Respondent, *v.* I<small>SAAC</small> O<small>ZDOBA</small> et al., Copartners under the Firm Name of O<small>ZDOBA</small> B<small>ROTHERS</small>, Appellants. (Actions 1 and 2.)

Evidence — forgery — bills, notes and checks — upon issue of fact of forgery rules of evidence are alike in civil and criminal cases — permissible to show, in action upon promissory note, where issue is forgery, that other indorsements upon same or other notes, part of same transaction, are forgeries — whole plan and scheme of procurer of notes may be shown.

1. Upon the issue of the fact of forgery, that is, whether or not the signature is genuine, the rules in civil and criminal cases are alike. (Code Crim. Pro. § 392.)

2. In an action upon a promissory note against an indorser, where the indorsement is alleged to be a forgery, it is permissible to show that other indorsements upon the same or other notes linked to and part of the original transaction coming from the same person were also forgeries.

3. Where two notes were given in settlement of a litigation, one indorsed by defendants' firm name and the other by a third party, which latter note was returned as unsatisfactory and another received in its place also indorsed by defendants' firm name, in an action against the alleged indorsers to recover the amount of the notes, defended upon the ground that the indorsements were forgeries, it is competent to show the whole plan and scheme of the man procuring and giving the notes and to introduce evidence establishing the forgery of all signatures and all indorsements, including those on the note returned. It has the probative effect of substantiating the claim of defendants that their signatures are likewise forgeries.

*Altman* v. *Ozdoba* (2 cases), 206 App. Div. 610, reversed.

(Argued November 21, 1923; decided December 27, 1923.)

APPEAL, in each of the above-entitled actions, by permission, from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered March 12, 1923, unanimously affirming a judgment in favor of plaintiffs entered upon a verdict.

*Samuel Greenbaum* and *Moses Cohen* for appellants. The court erred in excluding the proffered testimony of Bernstein and Marcus. (*People* v. *Molineux*, 168 N. Y. 264; *Shaffner* v. *Commonwealth*, 72 Penn. St. 63; *Illch* v. *M. L. Ins. Co.*, 119 App. Div. 695; *People* v. *Dolan*, 186 N. Y. 4.)

*Chester B. McLaughlin, Jr.*, and *I. Gainsburg* for respondents. Evidence of other alleged forgeries by the makers of the notes was not relevant or competent as against the payees. In any event, such evidence was not material to the sole issue submitted to the jury, and no reversible error was committed by its inclusion. (*Booth* v. *Powers*, 56 N. Y. 22.)

CRANE, J. The firm of Altman & Grodin had a law suit with the firm of Wilsker & Smoller which came on

for trial in the Supreme Court in October of 1920. After the case had been tried for two or three days it was settled for the sum of $5,000, to be paid according to the terms of a stipulation signed by the attorney for the plaintiffs and the attorney for the defendants. This stipulation recited that the action was to be settled for $5,000 " payable as follows: by two promissory notes made by the defendants herein for the sum of $2,500 each, dated October 23, 1920, and due respectively February 2d, 1921, and February 25, 1921, and endorsed by Ozdoba Brothers, which notes when paid shall be in full payment of all claims and demands which the plaintiffs have against the defendants, and it is agreed that upon the payment of said notes, general releases shall be exchanged between the parties."

The notes were given, but were not paid. These two actions which have been consolidated on appeal were brought against the indorsers, Ozdoba Brothers. After a trial and verdicts for the plaintiffs separate judgments were entered against the defendants for the full amount of the notes with interest and separate appeals were taken to the Appellate Division and to this court. For the purposes of this opinion, the two actions will be treated as one appeal, as there is but one record and the same evidence applies to both notes.

The defense set up by the Ozdoba Brothers was forgery. They denied having signed the two notes as indorser and claimed to have no interest whatever in the litigation between Altman & Grodin and Wilsker & Smoller. There was no direct evidence upon the trial that either member of the firm of Ozdoba Brothers indorsed the notes or ever authorized them to be indorsed. No one saw Ozdoba or his partner sign their name. There was no comparison of handwriting with any recognized or admitted standard of handwriting.

The plaintiffs came into the possession of the notes in this way. Louis B. Brodsky was the attorney for Wilsker

& Smoller and as such signed the stipulation settling their action. He testified that the day after the case had been marked settled and discontinued in court he found two notes on his desk put there in the regular course of business. He sent both of them over to Mr. Gainsburg's office. Gainsburg was the attorney for Altman & Grodin. Brodsky said: " They purported to have two different signatures on the back of them, one by Ozdoba Brothers, and the other, by Bernstein & Markus.

" Q. They were promptly returned? A. They were.

" Q. And what did you do thereafter with those two notes, one bearing Ozdoba's endorsement and the other, did you say Bernstein & Markus? A. I called upon Wilsker & Smoller, delivered the message delivered to me by Mr. Gainsburg.

" Q. What did you do with the two notes, the first two notes bearing one Ozdoba Brothers' endorsement and one Bernstein & Markus? A. I believe I returned one of them.

" Q. Which one? A. The one with the Bernstein & Markus' endorsement.

" Q. To whom? A. To Messrs. Wilsker & Smoller. * * * I received another note with a signature, with a signature purporting to be of Ozdoba Brothers endorsed on the back of the note ' Notes made by Wilsker & Smoller.'

" Q. How soon after you returned the note containing the name of Bernstein & Markus, on the reverse sides thereof, did you receive this note in place of it with Ozdoba Brothers' name on the back of it? A. I should say two or three days.

" Q. You have used the expression with reference to both notes, one referring to Ozdoba Brothers, purporting to contain or have the name of Ozdoba Brothers. All that you know was that the name of Ozdoba Brothers appeared there? A. That is correct. * * * I delivered them to Mr. Gainsburg."

As before stated, the issue being tried was the genuineness of Ozdoba Brothers' indorsement. They denied

their signature and any interest in the litigation, or in the plaintiffs. They denied having indorsed the notes or having authorized anybody else to do so.

The defendants called Jacob Bernstein of the firm of· Bernstein & Markus and asked him this question:

" Did you in the latter part of October, 1920, endorse a note made by Wilsker & Smoller for $2,500 payable to Altman & Grodin? "

The objection of the plaintiff's counsel to this question was sustained and the answer excluded. The exception to this ruling presents the only serious question upon this appeal, and one that has given us much serious thought and attention.

Having given the facts in this case we may put the question which is thus presented in this form. In an action upon a promissory note against an indorser where the indorsement is alleged to be a forgery, is it permissible to show that other indorsements upon the same or other notes linked to and part of the original transaction coming from the same person were also forgeries? We think that both reason and authority justify the conclusion that such evidence is competent. The fact that this is a civil case instead of a criminal prosecution plays no part. In both classes of action the fact in this particular to be established is the same, to wit, is the signature a forgery? To prove it a forgery the same kind of evidence may be received in the one case as in the other. It would be strange indeed if one branch of the court in a criminal case should permit certain evidence to establish the fact that a signature was a forgery and exclude the same evidence in a civil part ·when an action were brought upon the note. There is neither reason nor logic in such an arbitrary distinction. In fact, it is stated in section 392 of the Code of Criminal Procedure that the rules of evidence in civil cases are applicable also to criminal cases except as otherwise provided in the Code. It may be, and no doubt is, that the evidence which is

sometimes received in criminal actions in order to show scienter or intent would be immaterial at times in civil cases where knowledge and intent are unnecessary to sustain the cause of action. But upon the issue of the fact of forgery, that is whether or not the signature is genuine, the rules in civil and criminal cases are alike and should be.

In the first instance two notes were given by Brodsky in settlement of the litigation with the plaintiffs. One was signed by Bernstein & Markus, presumably, and was returned to Wilsker. In its place a second note was given presumably indorsed by Ozdoba Brothers. This note of Berstein & Markus came from Wilsker as did those indorsed by Ozdoba Brothers. It was part of the same transaction and used for the same purpose. It was part of the alleged scheme and plan of Wilsker to settle his litigation in the Supreme Court and procure delay in payment of the amount due. The fact that the name of Bernstein & Markus appeared upon a second note is no different in effect than if their name appeared under the signature of Ozdoba Brothers, as indorsers on the same note. Under such circumstances when the signature of Ozdoba Brothers is denied and claimed to be a forgery, it is competent to show the whole plan and scheme of the man procuring and giving the notes and to give evidence establishing the forgery of all signatures and all indorsements. It has the probative effect of substantiating the claim of Ozdoba Brothers that their signature is likewise a forgery. This we believe to be a rule well established by the authorities.

In *Boyd* v. *Boyd* (164 N. Y. 234, 241) O'BRIEN, J., said: " In all cases where it is alleged that a party has acquired the property of another through some fraudulent device, the charge may be supported by proof of contemporaneous acts of the same character."

And again: " Proof of other and similar fraudulent acts is admissible when it appears that there is such a connection between the transactions as to authorize

the inference that both frauds are part of one general scheme, and where transactions of a similar character by the same party are closely connected in point of time, and otherwise, the inference is reasonable that their purpose and origin are the same."

This same rule was recognized and more fully explained in *People* v. *Molineux* (168 N. Y. 264).

In *People* v. *Duffy* (212 N. Y. 57, 66) we find it stated that the law " permits proof of a plan or scheme to commit a series of crimes including the one for which the accused is being tried, and as tending to show the existence of such plan or scheme it allows testimony of the commission of crimes other than the one charged, but so related in character, time and place of commission as to tend to support the conclusion that there was a plan or system which embraced both them and the crime which is charged."

The rule is by no means confined to criminal cases. (See *Boyd* v. *Boyd, supra; Illch* v. *Mutual Benefit Life Ins. Co.,* 119 App. Div. 695; *Rankin* v. *Blackwell,* 2 Johns. Cas. 198; *Hall* v. *Naylor,* 18 N. Y. 588; *Miller* v. *Barber,* 66 N. Y. 558; *Yakima Valley Bank* v. *McAllister,* 37 Wash. 566.)

In *Faucett* v. *Nichols* (64 N. Y. 377, 383) we find, an application of this principle of probative force to circumstances similar to those in this case. The action was brought against an innkeeper to recover for the loss of plaintiff's horses, carriage, harness, etc., which were burned in the barn, plaintiff being at the time a guest. The defense attempted to be established was that the fire was the work of an incendiary and that it occurred without defendant's negligence. Such defense was within the provisions of the Innkeeper's Act, chapter 658 of the Laws of 1866. The defendant offered to show that an attempt was made upon the same night to fire a building within forty rods of defendant's barn where buildings were close and compact, and that kerosene,

paper and other combustibles were used in that attempt. The evidence was excluded.

This court, speaking through ANDREWS, J., considered this error, and said:

" The defendant called one Trenchard as a witness, and offered to show by him that on the next street west, within forty rods of the barn which was burned, an attempt was made during the same night to fire a building, at a point where the buildings were close and compact, and that kerosene, paper and other combustibles were used in the attempt. This evidence was objected to as immaterial, and it was excluded by the judge. I am of opinion that the evidence offered was admissible. The offer was to show an actual attempt on the same night to burn another building in the same village, by the use of similar means, as the evidence on the part of the defendant tended to show, were used in firing the barn.

" The fact in issue, to which this evidence related, was whether the defendant's barn was fired by an incendiary. If there had been a series of incendiary fires in that village previous to and near the time of the fire in question, could not this fact have been shown in aid of the defence? It cannot be denied that in connection with the other circumstances proved, it would have produced upon the mind a strong conviction that the fire in the defendant's barn was also caused by an incendiary.   *   *   *

" There is no fixed and definite rule by which it can be determined whether a collateral fact is so remote as to be inadmissible to support the principal fact sought to be established. The question must, to a considerable extent, be decided in each case, on its own circumstances, and we are of opinion that the proof offered, to which we have referred, ought to have been admitted."

We think that within this rule of evidence which

15

has been applied in both civil and criminal cases the indorsement of Bernstein & Markus was so much a part of the original transaction and of a scheme and plan by Wilsker to cheat and defraud by forgery as to make admissible the testimony of Bernstein that his signature was forged. It would have some tendency to prove that the indorsement of Ozdoba Brothers was also forged.

The case of *Costelo* v. *Crowell* (139 Mass. 588) has been called to our attention as bearing on this question. In an action on a promissory note the defendant contended that it had been forged by the plaintiff, and asked a witness whether he knew anything about the plaintiff making imitations of notes by a tracing, whether the plaintiff had told him anything about making such imitations and whether the plaintiff had told him how he could make such imitations by means of a lamp and a table. This evidence the Supreme Judicial Court of Massachusetts determined had been rightly rejected. There was nothing in these visionary notes to show a common scheme or plan involving the note in suit. The other tracings or purported forgeries were in no way connected with the main transaction. The facts clearly did not bring the case within the rule which we have here enunciated.

We think, therefore, that very material evidence was improperly excluded by the trial court, and that the judgments recovered below must be reversed and a new trial granted.

We have not overlooked the point made regarding the admission in evidence of the stipulation between the attorneys for Altman & Grodin and Wilsker & Smoller for the settlement of their litigation. This stipulation contained a statement that the notes given in settlement were to be indorsed by Ozdoba Brothers. Whether such a statement was competent evidence in an action on the notes against Ozdoba Brothers who had nothing to do with the making or giving of the stipulation we

do not consider as there was no proper objection made or exception taken to this evidence.

Wherefore, the judgments appealed from must be reversed, and a new trial granted, with costs to abide the event.

Hogan, Cardozo and Pound, JJ., concur; Hiscock, Ch. J., and Andrews, J., dissent; McLaughlin, J., not sitting.

Judgments reversed, etc.