OPINION OF THE COURT
Arthur D. Spatt, J.
This motion by plaintiff and additional defendants on the counterclaim for an order vacating and setting aside the notice for production and inspection of documents dated January 24, 1980, is determined as set forth below.
BACKGROUND
This is an action based on alleged “commercial espionage”. Plaintiff is engaged in the distribution of well-known trademarked products throughout the United States at discount prices. Plaintiff alleges that defendant Union Carbide Corporation (herein referred to as Carbide) conspired to obtain confidential information about the plaintiff by inducing plaintiff to hire an employee of defendant I.B.I. Security Service, Inc. (herein referred to as IBI), who gave reports on plaintiff’s activities to Carbide. As a result of this conspiracy, plaintiff seeks substantial compensatory and punitive damages totaling $13,000,000.
Carbide alleges, by way of defense and counterclaim, that plaintiff and the additional defendants conspired to defraud Carbide by a plan and scheme that plaintiff had used successfully before. The alleged scheme was that plaintiff falsely represented that the products were being purchased for export, thus fraudulently obtaining the lower export price for such products. Then, instead of selling the products in the export market, as represented, the products were sold domestically.
Following problems in the conducting of the examination *181 before trial of the plaintiff, this court rendered an order dated August 3, 1979 (Spatt, J.) in which, inter alla, the plaintiff was directed to appear and complete its examination before trial. This examination did finally commence on January 10, 1980, and was apparently concluded on January 14,1980.
Thereafter, Carbide served a “Notice for Production and Inspection” dated January 24, 1980 (herein referred to as the notice) which is the subject of this motion for a protective order.
THE ANSWER
Since Carbide contends that its notice was served both in defense of the plaintiff’s action and in support of its counterclaim, a review of the pertinent portions of the answer of Carbide is required.
The third defense alleges that plaintiff and certain additional defendants entered into a “common plan and scheme” to violate the antitrust laws and to defraud Carbide and “have each committed acts in furtherance of their conspiracy”. The substance of the conspiracy was the “representation to Carbide that such products would be exported for sale outside the United States”. In furtherance of this conspiracy, Carbide alleges that in June, 1970, a large quantity of “Everready” flashlight batteries were sold at the lower export price.
The counterclaim realleges the conspiracy to defraud as set forth in the third defense, demanding compensatory damages in the sum of $324,480 and punitive damages in the sum of $10,000,000.
CONTENTIONS
Plaintiff contends that the notice should be vacated on the grounds: (1) the “sources” of plaintiff’s acquisition of its products are “trade secrets” which are not discoverable; (2) that Carbide is attempting to establish that plaintiff is a fence and deals with a convicted seller of stolen goods, which is outside the scope of any issues in this case; (3) documents seeking to discover purchases of products made *182 by plaintiff intended for overseas shipments are not discoverable under a prior order of this court dated May 15, 1974 (Velsor, J); (4) documents as to plaintiff’s “sources” are not sought in good faith and will hurt plaintiff who must maintain confidentiality; (5) the period of time requested, namely from 1966 to the present time, is an unreasonable request intended to harass and delay plaintiff; (6) the records requested would take at least 75 hours to locate: (7) all records more than six years old have been destroyed; (8) the records required are not “material and necessary” except in a peripheral fashion.
On the other hand, Carbide contends, among other things, that the documents set forth in the notice are necessary with regard to its defense of the plaintiff’s action and also in support of its counterclaim. It contends that it has a right to inquire into “this same export scheme”, which it states has apparently been used against numerous other manufacturers by these very same companies, in support of its defense and counterclaim of conspiracy to defraud.
In addition, Carbide contends that plaintiff has been “implicated in investigations” by law enforcement agencies; that an employee of plaintiff was involved in a Federal criminal prosecution; and that in a State Investigation Commission study on “fencing”, plaintiff was one of the targets of the investigation and a recipient of illegally obtained merchandise.
Further, Carbide denies plaintiff is entitled to any “trade secrets” protection. It states: (1) that on January 18,1977, the County Court of Nassau County denied an application by plaintiff to quash a subpoena as to plaintiff’s sources of supply despite a claim of confidentiality advanced by plaintiff in that tribunal; (2) the identity of plaintiff’s “sources” has been known to Carbide for some time, or has been revealed in the examination before trial of plaintiff’s witness Sidney Spielfogel; and (3) in another case, an antitrust cause entitled Austen & Co. v McNeil Lab. (76 Civ 1214), an order was entered on August 25, 1978 (Bernikow, J.) in which plaintiff’s claim of trade secrets was rejected.
Carbide also states as a basis for various items of discovery in its “summary” that “the propriety of this infor *183 motion was litigated on Union Carbide’s prior motion and is subject to this Court’s order of disclosure”.
Lastly, Carbide contends that all of the items in its notice concern data which is material and necessary for both its defense and counterclaim.
DETERMINATIONS
As stated in the prior order of this court dated August 3, 1979, discovery in this State is predicated upon the rule set forth by Chief Judge Fuld in the oft-cited case of Allen v Crowell-Collier Pub. Co. (21 NY2d 403). This classic case —referred to by Professor Siegel as a “gift” to the legal profession (Siegel, New York Practice, § 344, p 421) — fused the dual requirements of “material and necessary” into the single word “relevant” and adopted the clear and simple language of Matter of Comstock (21 AD2d 843, 844) as follows: “If there is any possibility that the information is sought in good faith for possible use as evidence-in-chief or in rebuttal or for cross-examination, it should be considered ‘evidence material * * * in the prosecution or defense’.” (Allen v Crowell-Collier Pub. Co., 21 NY2d, supra, at p 407.)
Prior to examination of each item of the notice in detail, the court will review the law with regard to the contentions of the plaintiff in support of this motion for a protective order.
Plaintiff cannot here validly find refuge in a claim that his “secondary sources” are trade secrets.
The burden of proof of showing the appropriate immunity is on the party asserting it. (Koump v Smith, 25 NY2d 287, 294.) Plaintiff’s proof that his secondary sources are “trade secrets” consists of conclusory statements to the effect that plaintiff’s suppliers “would prefer not to have their dealings with Interstate Cigar Co. Inc. publicized”. While the court can appreciate the plaintiff’s desire to keep its sources secret, plaintiff has commenced a major lawsuit, alleging fraud and seeks substantial money damages.
Be that as it may, the court need not decide whether the jewelers scale preponderates in favor of the plaintiff, since *184 Carbide does not ask for the identity of the sources. Carbide already knows the names of these sources — some of whom were obtained from the plaintiff’s witnesses on deposition— and requests documents in connection with these known sources.
In passing, the court notes that even if these sources were found to be true “trade secrets”, plaintiff would be entitled to conditional but not absolute protection. If the defendant made a showing of (1) necessity for the examination and (2) that the information cannot be otherwise obtained, the discovery would be permitted even though it would reveal trade secrets. (Drake v Herrman, 261 NY 414; Kaplan v Roux Lab., 273 App Div 865; Fibron Prods. v Hooker Chem. Corp., 26 Misc 2d 779, 782.)
The more interesting question is whether Carbide can obtain discovery as to. alleged similar transactions involving fraudulent conduct by plaintiff with other manufacturers involving other products, for use in the conspiracy defense and counterclaim.
At the outset, the court notes the words of guidance in discovery as set forth in Allen (supra, p 407), namely “If there is a possibility that the information is sought in good faith for possible use as evidence-in-chief * * * or for cross-examination, it should be considered ‘evidence material * * * in the prosecution or defense’.” (Emphasis supplied.) Thus we see that discovery may be permitted if there is a possibility of the admissibility of this evidence; while at the trial a decision will be made by the Trial Justice whether the evidence is admissible.
Here we are dealing with the defense and counterclaim of conspiracy to engage in a fraudulent scheme. While it has been said that no branch of the law seems less clear than that of civil conspiracy, within certain limitations and conditions, civil liability for “conspiracy” has been held to exist. (8 NY Jur, Conspiracy, § 1.)
In general terms, a conspiracy is a combination or agreement between two or more persons to do an unlawful thing, or to do a lawful thing in an unlawful manner.
There is really no substantive tort of conspiracy. To state *185 a cause of action for conspiracy requires an adequate assertion of proof .of a common plan or scheme for common action for a common purpose by common agreement or understanding among a group of people from which common responsibility derives. (Goldstein v Siegel, 19 AD2d 489.)
It has been held that the allegation of conspiracy is merely a pleading device permitting evidence in the trial connecting one defendant with the act of his codefendant. (Katz v Thompson, 19 Misc 2d 848, affd 9 AD2d 951.)
As was set forth in Glaser v Kaplan (5 AD2d 829, 830) the rule is as follows: “The gravamen of a conspiracy is fraud and damage and not the conspiracy. The allegation and proof of a conspiracy are only important to connect a defendant with the acts and declarations of his coconspirators, where otherwise he could not have been implicated (Green v. Davies, 182 N.Y. 499, 504; Brackett v. Griswold, 112 N.Y. 454, 466-467). A conspiracy to commit an actionable wrong is not in itself a cause of action (Moskin v. Lyden, 200 App. Div. 304).”
As stated recently in Satin v Satin (69 AD2d 761, 762): “There is no tort of civil conspiracy in and of itself. There must first be pleaded specific wrongful acts which might constitute an independent tort.” (See, also, Vom Lehn v Astor Art Galleries, 86 Misc 2d 1.)
The tort or pleading device of conspiracy is also characterized by the difficulty in securing proof thereof, as stated in Kevizky v Lorber (290 NY 297, 302): “Direct and positive proof of a conspiracy to cheat and defraud such as is here presented is seldom, if ever, attained. Conspiracies of this nature ordinarily are not conceived and executed openly but in secret. Usually the only evidence available is that of disconnected acts on the part of the individual conspirators, which acts, however, when taken together in connection with each other, show the conspiracy to secure a particular result quite as satisfactorily and conclusively as more direct proof.”
The law of discovery as to alleged similar transactions involving the plaintiff and other manufacturers concerning other products, necessitates a chronological review of the precedents.
*186 In Hall v Naylor (18 NY 588) a fraud case, it was held competent to show that the party accused was engaged in other similar frauds at or about the same time. The court went on to explain (supra, p 589): “The transactions must be so connected in point of time, and so similar in their other relations, that the same motive may reasonably be imputed to them all (Carey v. Hotaling, 1 Hill, 311, and cases cited.) It is not necessary, however, that the means of accomplishing each fraud should be the same. Where the question is, whether goods have been procured by a fraudulent suppression of facts material to credit given, it will be competent to prove that, in other instances, they have been obtained by actual misrepresentation concerning the same facts. The concealment in one case and false representation in the other are evidence merely of a fraudulent design, common to both transactions, of procuring goods without the ability or the intention to pay for them.” (Emphasis supplied.)
Faucett v Nicholas (64 NY 377), a fire loss case, involved a defense of arson. Evidence that an attempt was made on the same night to burn another building in the same village by the use of similar means was held to be admissible.
An important case is Boyd v Boyd (164 NY 234) which involved a forged document, with proof of a similar contemporaneous forgery. Held admissible (supra, pp 241, 242):
“In all cases where it is alleged that a party has acquired the property of another through some fraudulent device, the charge may be supported by proof of contemporaneous acts of the same character * * *
“Proof of other and similar fraudulent acts is admissible when it appears that there is such a connection between the transactions as to authorize the inference that both frauds are part of one general scheme, and where transactions of a similar character by the same party are closely connected in point of time, and otherwise, the inference is reasonable that their purpose and origin are the same. The reason for receiving evidence of this character was very clearly stated in a recent case as follows: ‘Acts which are part of one general scheme or plan of fraud, designed and put in execu *187 tian by the same person, are admissible to prove that an act which has been done by some one was in fact done by the person who designed and pursued the plan, if the act in question is a necessary part of the plan.’ (Fowle v. Child, 164 Mass. 213; N. Y. M. L. Ins. Co. v. Armstrong, 117 U. S. 591; Jordan v. Osgood, 109 Mass. 457.)”
Evidence of other forgeries are admissible if they are part of the original transaction and of a scheme or plan to defraud. (Altman v Ozdoba, 237 NY 218.)
Where the issue is the fraudulent transfer of bonds, evidence of other and contemporaneous transactions of a similar fraudulent nature were held admissible in Matter of Booth (215 App Div 516) citing the language expressed in Hall v Naylor (supra).
In Chiba v Kurutz (263 App Div 33, 34-35) involving employees compelled to “kick-back” part of their wages, the court permitted the joinder of five such employee actions in one lawsuit: “The rule is that in civil, as well as in criminal, cases, where it is alleged that a party has acquired the property of another through some fraudulent device, the charge may be supported by proof of contemporaneous acts of the same character.”
A reading of the cases reveals in all a similar thread, namely, (1) there must be proof of a common plan or scheme and (2) the similar other transactions must be in close proximity in time or contemporaneous to the subject transaction. Therefore, in this case, the court will allow discovery as to similar transactions by and between plaintiff and other manufacturers involving other products on the ground that there is a possibility that such similar transaction will be admissible on the trial. These other similar transactions to be discoverable must be reasonably close or contemporaneous to this transaction, in point of time.
In determining the proximity in time to the conspiracy asserted in the answer, the court notes that Carbide alleged that the particular transaction pleaded which involved its “Everready” flashlight batteries took place “in or about June, 1970”.
*188 The cases permitting evidence of other similar fraudulent transactions apparently limit such evidence to other transactions which occur “connected in point of time” (Hall v Naylor, 18 NY 588, 589, supra) or “previous to and near the time * * * in question” (Faucett v Nichols, 64 NY 377, 383, supra) or “contemporaneous acts of the same character” (Boyd v Boyd, 164 NY 234, 241, supra). In this discovery proceeding, given the extended nature and scope of the alleged conspiracies, Carbide shall be given additional leeway so as to enable it to attempt to obtain evidence for use on the trial with regard to alleged similar fraudulent transactions.
Accordingly, the discovery of the documents as to alleged similar fraudulent transactions with other manufacturers involving other products shall be permitted, as more specifically set forth hereinafter, to a period from 1966 to 1971, a year subsequent to the “Everready” battery transaction which is the subject of the counterclaim.
Since the court is permitting discovery with regard to prior similar “export” transactions with other manufacturers involving other products, plaintiff’s offer to waive proof of damages based upon decrease in business with such suppliers will be considered inoperative.
Carbide seeks broad discovery of documents under the general topic “evidence of other similar acts of diversion and of Interstate’s receipt of stolen merchandise”. We are here not concerned with impeachment by proof of a conviction of a crime by plaintiff, as was the case in Goberman v McNamara (76 Misc 2d 791) and in Guarisco v E.J. Milk Farms (90 Misc 2d 81). Here, Carbide seeks to discover evidence for use on cross-examination for impeachment as to criminal or immoral acts of plaintiff or its employees as bearing on credibility and to show that plaintiff’s witnesses are unworthy of belief. (Richardson, Evidence [10th ed], § 498; 1 Mottla, New York Evidence [2d ed], § 437.)
As to this subject of discovery, Carbide has many obstacles to overcome. No direct proof has been offered connecting plaintiff or its employees with intentionally receiving stolen goods. There is available to the plaintiff, if desired, the *189 shield of the Fifth Amendment. In addition, these specific acts of misconduct relevant to impair a witness’ credibility can be elicited only on cross-examination; they may not be proved by extrinsic evidence. (People v McCormick, 303 NY 403; People v La Rue, 47 AD 2d 649.)
The extent to which disparaging questions, not relevant to the issue but bearing on the credibility of a witness, may be put upon cross-examination, is discretionary with the trial court. Such questions must be asked in good faith and have a reasonable basis in fact. (People v Greer, 42 NY2d 170; People v Korn, 40 AD 2d 561; Fisch, New York Evidence [2d ed], § 457, p 296.)
The proper forum for such questions as to immoral or criminal acts is the courtroom, under the watchful eye of the Trial Justice. It is not, in this court’s view, under the circumstances of this case, proper for Carbide to attempt to obtain such incriminating evidence from the alleged perpetrator itself.
Further, the court denies such discovery as to alleged criminal or immoral acts pursuant to the provision of CPLR 3103 (subd [a]) in that the court has the power to regulate disclosure so as to prevent “unreasonable * * * embarrassment, disadvantage, or other prejudice to any person”.
Therefore, Carbide’s requests for discovery as to evidence of plaintiff’s involvement with alleged “fencing” and “receipt of stolen merchandise” is denied.
As to Carbide’s contention that the prior order of disclosure of this court dated August 3, 1979, is dispositive of some of these present requests for discovery, the court does not agree. A review of the court’s prior order, the motion papers, and, in particular, Exhibit Nos. 16, 17 and 28 annexed to the moving papers, reveals that there have been no such specific definitive decisions by the court.
The remaining contentions of the plaintiff in support of this motion have been considered and determined to be without merit.
The plaintiff is directed to produce all records and documents in Carbide’s notice for production and inspection dated January 24,1980, and allowed herein, within 30 days *190 of the date of service of a copy of the order to be entered based upon this memorandum decision upon its counsel. In the event the plaintiff does not have possession of any records, an affidavit stating the facts as to lack of possession, by an employee of the plaintiff having knowledge of the records, shall be served upon counsel for Carbide within 20 days after the date of service of a copy of said order.
The records may be produced at the offices of the attorney for the plaintiff, or at the offices, plant or warehouse of the plaintiff, provided such notice thereof is given to the attorneys for Carbide within 20 days after the date of service of a copy of this order. All such records may be photostated or otherwise reproduced by the attorneys for Carbide at the sole expense of Carbide.
Settle order on notice, which order shall provide a decretal .paragraph to the effect that all documents and data disclosed by the plaintiff under the terms of this order and the notice to produce dated January 24, 1980, will be used solely for the purposes of this lawsuit and will not be disclosed or revealed by Carbide or its attorneys to any third person without the prior written consent of the plaintiff or the permission of the court.