In the Matter of the Estate of ALICE BRANDON, Deceased. ANN MURPHY et al., Appellants; ETHEL BASHNAL, as Executrix of ALICE BRANDON, Deceased, Respondent.

Second Department, March 2, 1981

### APPEARANCES OF COUNSEL

*John R. Kelligrew* for appellants.

*William A. Egan, Jr.,* for respondent.

### OPINION OF THE COURT

O'CONNOR, J.

In this discovery proceeding to recover property belonging to decedent, the jury concluded that certain of decedent's assets had been surrendered as the result of fraud and undue influence. We now hold that this verdict was amply supported by the record, and that no error occurred when two prior judgments involving findings of undue influence against appellant Murphy were introduced into evidence. Accordingly, the decree must be affirmed.

Ethel Bashnal, the executrix of the estate of Alice Brandon, initiated this proceeding to make inquiry into the disappearance of very substantial assets belonging to decedent during her stay at the home of appellant Ann Murphy. Following a jury trial, it was found that Murphy and appellant Mortimer O'Brien, Jr., had obtained a considerable portion of decedent's assets as the result of fraud and undue influence, and they were directed to return that which was improperly obtained. Contrary to the assertion advanced by appellants, the jury's verdict is based not only upon adequate evidence, but upon overwhelming proof in the record.

The trial testimony clearly established the following facts: Mrs. Murphy owned and operated a nursing home known under the inviting and totally disarming title of the Friendly Acres Home for Adults. Decedent, a timid, aged and severely ill widow visited Friendly Acres with the thought of taking up residence there. She was a woman of intelligence and substance, and entertained severe misgivings concerning her ability to cope with daily institutional life amidst such surroundings. Mrs. Murphy promptly dispelled her fears by inviting her to stay, as a paying guest, in the luxurious Murphy home, located on the extensive grounds of an exclusive country club. The offer was quickly accepted.

In the months that followed, decedent, totally dependent upon Mrs. Murphy for her existence, was made increasingly inaccessible to her family and friends. During the few hurried moments when she was left free to speak with old friends, she indicated a growing unhappiness with the situation in which she found herself. Alice Brandon was of conservative and frugal habits, not given to bestowing largess or bountiful gifts to even her closest relatives. Suddenly, and shortly after coming under the Murphy influence, a drastic change occurred in decedent's dedication to these lifelong penurious practices. Witness the inexplicable "gift" to her benefactor of more than $20,000 towards the purchase of a luxury automobile, as well as the bestowal of myriad other costly "presents". This and other examples of extraordinary largess occurred despite the fact that during her stay as a "guest" in the Murphy home,

Alice Brandon paid to appellants the sum of $600 per month for room and board! It does not require a cynical or unduly inquisitive mind to conclude that the jury's determination that the assets of decedent were obtained by fraud and undue influence is fully supported by the record.

Appellants argue that reversible error occurred when two prior judgments decreeing that undue influence had been exerted by Mrs. Murphy on other elderly residents of her home were admitted in evidence. Thus, on cross-examination Mrs. Murphy admitted that one Daniel Sullivan, prior to his death and while a resident in the Murphy home, set up a trust account for her benefit. She further conceded that the court there made a finding that the trust was created as a result of undue influence exercised by her and that the corpus of the trust was ordered returned to the Sullivan estate.

An almost identical and equally reprehensible situation came to light with the death of another resident of the Murphy household, one Louise Metz. The Metz will was denied probate with a finding of undue influence and fraud exercised upon that decedent by Mrs. Murphy, the principal beneficiary.

Appellants, now piously protesting that such evidence serves solely to show a predisposition for fraud and undue influence, insist that such testimony was so highly inflammatory that any probative value was miniscule compared to the resultant prejudice and that a reversal is hence mandated.

To the contrary, we find that the Sullivan-Metz matters were properly admitted as tending to establish a common scheme or plan under which appellants inveigle into Murphy's place of residence aged and ailing residents of her nursing home for the purpose of stripping them of their life savings (see *People v Molineux*, 168 NY 264; *Altman v Ozdoba*, 237 NY 218). Proof of such fraud practiced upon infirm individuals since deceased is, by the very nature of things, dependent upon circumstantial evidence and is always difficult to establish. Where there exists such a similarity in the character and nature of the wrong purportedly perpetrated and when the *modus operandi* is

discernibly similar, the introduction of the earlier acts tends strongly to support the conclusion that there was here a system encompassing a broad general scheme of which the instant matter is but a single sample. Under the extant circumstances, the probative value of the prior occasions far outweighs any potential prejudice, and under any reasonable extension of the *Molineux* rule is admissible.

To establish that decedent transferred her assets to appellants solely as the result of undue influence and fraud, the executrix of the estate constructed a thin but firm foundation for the introduction of evidence that Mrs. Murphy's *modus operandi* was not uniquely limited to this instance. The scenario is clearly etched in the record: senior citizens facing and fearing institutional living for the balance of their years are saved as Mrs. Murphy, garbed in the role of an angel of charity and compassion, appears and guides these troubled people to the comfort and security of her own home. In appreciation for such munificence, three of these aged and infirm but financially well-fixed beneficiaries, turning away from the natural objects of their bounty—their relatives and close friends—soon arrange to turn over their worldly assets to their "benefactor" either with *inter vivos* gifts or by way of testamentary disposition.

Appellants seek to discount the obvious inferences that naturally flow from such unusual conduct with the bland assertion that Alice Brandon was merely manifesting gratitude for favors received! In the light of this defense, the Metz and Sullivan judgments were piercingly probative on the issues placed before the jury. Was Alice Brandon really expressing her appreciation or was she simply the helpless victim of an over-all scheme to appropriate the assets of ill and ailing elderly people who were totally without the power to resist the undue pressures exerted upon them? The conclusion of the jury that decedent was but another victim funneled into the mercenary Murphy menagé through the Friendly Acres Home for Adults and that she was then unconscionably stripped of her worldly possessions is amply supported by the record.

Appellants place great emphasis upon the failure to crystalize the time frame of the Sullivan and Metz cases.

Aside from the fact that both dated judgments were before the Surrogate at the time he passed upon the question of admissibility, we further note that there is no reason to impose an arbitrary time limitation, as the periods involved go only to the primary issue of whether relevancy and probative value are outweighed by prejudice (see Richardson, Evidence [Prince, 10th ed], § 177). In this instance it is quite clear the prior emanations of the scheme were not so remote as to appreciably diminish their probative value.

We conclude by noting that an inflamed jury prejudiced against appellants would not have exercised the discriminating judgment evidenced by the verdict which found in favor of appellants as to several contested items. In short, the jury heeded the Surrogate's instructions regarding the limited purpose for which the Sullivan-Metz matters were introduced. They reached their verdict on the basis of properly admitted and compelling evidence. Accordingly, the decree must be affirmed.

MOLLEN, P. J., TITONE and MANGANO, JJ., concur.

Decree of the Surrogate's Court, Westchester County, dated February 11, 1980, affirmed, with costs payable personally by the appellants.