■ SUZANNE SHEPHERD et al., Appellants-Respondents, v NATHAN SERIL et al., Respondents-Appellants.—Order and judgment (one paper), Supreme Court, New York County (Herman Cahn, J.), entered August 23, 1984, which, *inter alia,* denied defendants' cross motion to dismiss the first, third and fourth causes of action, granted plaintiffs' motion for, *inter alia,* a preliminary injunction, to the extent of enjoining defendants from terminating or interfering with the tenancies other than with respect to those tenants against whom the complaint had been dismissed, and, as to the tenants to whom the injunction applied, from removing their personal property from the roof area appurtenant to their apartments, to the extent that such property was being used in conformity with the explicit terms of said order, modified, on the law, to apply said injunction to all the penthouse tenants except Mann/Bradley and, except as thus modified, affirmed, without costs or disbursements.

Plaintiffs, tenants and long-time residents in an apartment building known as the Belnord, brought this action to enjoin defendants, the owners and managing agent of the building

since 1974, from interfering with their use of the roof area adjacent to their apartments, which were constructed as an additional roof structure in 1947 by the present owners' predecessor in title. The 20 original plaintiffs leased their apartments in the years between 1975 and 1978. Only one of the leases, Mann/Bradley, contained a provision prohibiting the use of the roof. Another, Pettit's, limited the weight of any pot plants placed on the roof to 10 pounds. This limitation is within the restrictions ultimately imposed on the tenants by Trial Term. Since the commencement of their leases, all the tenants, except Mann/Bradley, have used the roof area contiguous to his/her respective penthouse as a terrace or patio area, and have placed various items of personalty, such as barrel planters containing trees, shrubs and other plants, outdoor patio furniture, barbeques and, in some instances, fences and gates delineating individual terrace areas, on the roof. In 1975 the roof began to leak, as a result of which tenants of the floor below began to complain. In 1978 defendants engaged a contractor to repair the roof, parapet, courtyard exterior and other parts of the premises. At some point in time, depending on whose version is accepted, but certainly no later than 1978 or 1979, defendants advised the penthouse tenants that they had no right to use the roof at all, particularly since, as two experts testified, the roofing material used in the repair was neither designed or suitable for pedestrian traffic, nor capable of sustaining heavy weight.

At trial seven of the tenants testified that at the time they were shown their prospective apartments by defendants or by one Jacob Marks, the former resident-manager of the building, the apartments were described as penthouses, and the showing included a viewing of the roof, which was already being used by the then tenants as a patio area. This testimony was never rebutted. In addition to an entry door from the interior portion of the building each apartment had an entry door onto the roof area. For various reasons 13 of the tenants were unavailable to testify. All of the leases, however, were received in evidence. As already noted, only one, a recent lease, prohibited use of the roof. None of the leases provides a physical description of the particular apartment. That all the tenants except Mann/Bradley used the roof area adjoining their apartments as a patio for various periods of time up to 20 years or more was undisputed. Crediting this testimony, Trial Term found that the tenants who testified had established their right to the use of the adjoining roof area, but severely restricted that use to comply with applicable lease

and Fire Department regulations and other safety considerations. After review of the record, we affirm this aspect of Trial Term's determination.

Trial Term, however, with the exception of Mann/Bradley, limited the relief granted to only those tenants who testified, dismissing the complaints of those who did not. This was error. The testimony of those tenants who testified clearly established that all the penthouse rentals, except Mann/Bradley, included use of the roof area. Every apartment had a doorway onto the roof. The tenants' use of the adjoining roof area was constant, in some cases for as much as 20 years. All the leases for the period in question, even those of the tenants who did not testify, were in evidence. The testimony of the tenants as to the inclusion in their rentals of the adjacent rooftop areas and the continued use thereof, as well as the leases themselves, was sufficient to establish that the owner had a common plan or scheme with respect to the penthouse apartments. *(See, Altman v Ozdoba,* 237 NY 218.) Nor was the parol evidence rule violated, as defendants contend, by the admission of the tenants' testimony, since such evidence was not offered to change the terms of the lease, but merely to explain the meaning of the term "penthouse apartment" or "PH". *(See, Petrie v Trustees of Hamilton Coll.,* 158 NY 458.) Thus, all the penthouse tenants, except Mann/Bradley, are entitled to the benefit of Trial Term's injunction.

We modify accordingly. Concur—Sullivan, Ross and Kassal, JJ.

Kupferman, J. P., dissents and would affirm for the reasons stated by Cahn, J.